CLEMENS WHIRLWIND, Respondent, v. CHRIS VON DER AHE, Appellant.

St. Louis Court of Appeals, December 8, 1896.

1. **Contract**: CAPACITY OF TRIBAL INDIAN TO SUE IN STATE COURTS. A tribal Indian, placed upon a reservation under a government treaty, is not incapacitated from suing in the courts of Missouri for the enforcement of his rights under a contract entered into off the reservation, and while sojourning in the state.

2. **Motion for Rehearing**: JURISDICTION. On a motion for rehearing, on the ground that the case was one in which the validity of a statute of the United States, or authority exercised under the United States, was drawn in question, of which the supreme court had exclusive appellate jurisdiction,—Held: That clause in the constitution of Missouri, on which this claim is based, does not mean the construction of a statute of the United States, and the case at bar in no sense involves the validity of such a statute, nor any authority exercised under it, the parties both conceding the validity of the statutes.

*Appeal from the St. Louis City Circuit Court.*—HON. PEMBROOK R. FLITCRAFT, Judge.

TRANSFERRED TO SUPREME COURT TO DETERMINE JURISDICTION.

*Broadhead & Hezel* for appellants.

*Alex. Young* for respondent.

BOND, J.—Plaintiff and other Indians left their reservation at Rose Bud Agency, South Dakota, under a contract, secured by bond, made by one Taylor with the secretary of the interior providing for their good treatment during their absence and safe return to

the reservation. The Indians in question were hired at various salaries by said Taylor to take part in a performance termed *"Great Wild West Show."* When this exhibition was given at St. Louis, a contract was entered into between said Taylor and defendant, whereby a certain salary was to be paid Taylor for future superintendence of the *"show"* until certain expenses incurred by defendant should be reimbursed, after which the profits of the business were to be equally divided. The evidence tends to show that at this time defendant agreed also to advance Taylor $547.75 arrears of salaries due the Indians in his charge, and thereafter to pay directly to each of the Indians the same salary which he or she had hitherto drawn while under contract with said Taylor. The aggregate amount of the salaries due all the Indians was $290.50 per month. The *"show"* was accordingly put upon the road. Not proving a financial success, it was brought back to St. Louis. The Indians failing to receive their pay from defendant, assigned their respective claims to plaintiff, who instituted the present action on his own account and as assignor before a justice for a recovery of the sum so due. Defendant objected to the jurisdiction of the justice, on the ground that plaintiff had no capacity to sue. This objection being overruled, judgment was rendered for plaintiff, from which an appeal was taken to the circuit court by defendant.

On the trial there the validity of the assignments to plaintiff, the reasonableness of the charges, and the performance of the services by all of the Indians was admitted by defendant, who, however, denied that he made any contract directly with the plaintiff or his assignor. This denial raises the only issue of fact. Defendant also presented the question of the capacity of plaintiff—being a tribal Indian—to sue in the

present action, by an instruction, which was refused.
The jury found the issues in favor of plaintiff. From
a judgment in accordance defendant appealed to this
court and assigns for error the refusal of his said
instruction.

The theory underlying that instruction is that
plaintiff and his assignors being tribal Indians placed
on a reservation under a government treaty were
disabled to sue in the state courts for the enforcement
of contract rights entered into while they were off their
reservation. The weight of authority is against this
proposition. While under the protection of the gov-
ernment and living upon their reservation certain
limitations, for the protection of the, Indians, are
affixed to the exercise of contract rights by them.
*Jack Gho v. Charley Juless*, 1 Wash. Ter. 325; R. S.
U. S., secs. 2103, 2104. But when they are *off* their
reservation, they are not debarred from appealing to
the courts for the enforcement of personal rights, as
well as those springing from contracts made by them
while sojourning in the states. 1 Harvard Law
Reporter, p. 149; 15 Am. Law Rep., p. 32; *Swartzell
v. Rogers*, 3 Kan. 374; *Wiley v. Keokuk*, 6 Kan. 94;
*Labdell v. Hall*, 3 Nev. 507–516; *Yic Wo v. Hopkins*,
118 U. S. 356; *Mo. Pac. R'y v. Cullers*, 13 Law Rep.
An. 542. The doctrine of these authorities is reason-
able and consonant with the spirit of our institutions.
It is part of the American creed—expressed in the
chart of our liberties—that all men are created equal
before the law. In the administration of justice,
neither race, rank, nor riches confers any advantage on
its possessor over any other person. These accidents
are not permitted to mar the wisdom and purity of
laws made for the equal protection of every human
being. Upon this principle we have builded, on this
continent, the fairest fabric of freedom which has met

the eye of Time. We can not, in justice or humanity, deny the application of this principle to the original owners of the soil, nor refuse to any person, though neither citizen nor foreigner, the equal protection of the laws of any state, while he is a denizen of its borders. Our conclusion is that the plaintiff was not incapable of enforcing his contract rights in the courts of this state under the facts shown in this record. As the verdict disposed of the issue as to the contract of plaintiff and his assignors with defendant in favor of plaintiff, the judgment in his favor must be affirmed. All concur.

### SUPPLEMENTAL OPINION.

ROMBAUER, P. J.—The defendant who voluntarily took an appeal to this court, and who did not claim in his brief, or suggest in his argument, any doubt as to the jurisdiction of this court, now claims in his motion for rehearing that the case is one "wherein the validity of a United States statute, or authority exercised under the United States, is drawn in question, and that hence the supreme court has exclusive appellate jurisdiction therein."

The clause of the constitution of Missouri, on which this claim is based, has never been judicially construed by the supreme court. It evidently does not mean the construction of a statute of the United States, because while in all other clauses the word *construction* is used, in this clause it is omitted, nor can such omission be justly claimed as accidental. This case does in no sense involve the *validity* of a statute of the United States, nor any authority exercised under it, because the validity of the statutes is conceded by both parties. It is for these reasons that we concluded upon examination of the cause that we had jurisdiction thereof. In order, however, to give the supreme court an oppor-

tunity to determine the question of jurisdiction without delay, we have concluded to transfer this record to that court, so that it may upon its inspection either uphold or deny our jurisdiction, and thus furnish a guide for our future action in cases involving the construction of this clause of the constitution.

Ordered that the cause be transferred to the supreme court, with copies of the opinions filed therein. All the judges concur.